# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6439 | **DATE** | 7/6/2000 |
| **CASE TITLE** | Tokio Marine vs. J.J. Phoenix Express, Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Nissin's motion to dismiss the Airco Third Party complaint is granted. (23-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 7 2000 | 32 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/6/2000 | |
| SN | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOKIO MARINE & FIRE INSURANCE )
GROUP, as subrogee of TANITA CORP. )
OF AMERICA, )
)
Plaintiff, )
)
v. ) No. 99 C 6439
)
J.J. PHOENIX EXPRESS, LTD., et al.,)
)
Defendants. )

MEMORANDUM OPINION AND ORDER

Nissin International Transport USA, Inc. ("Nissin," incorrectly spelled in the pleading at issue as "Nissen") has moved to dismiss the Third Party Complaint ("TPC") of Airco International, Inc. ("Airco"), which is one of two defendants in this Carmack Amendment action brought by Tokio Marine and Fire Insurance Group, as subrogee of Tanita Corp. of America ("Tanita"). Airco has come back with some shifty moves worthy of Barry Sanders. But as best as can be made out from Airco's response to Nissin's motion, the correct course of action now is to grant Nissin's motion--albeit with leave granted to Airco to replead if its counsel can do so in the exercise of the objective good faith mandated by Fed. R. Civ. P. ("Rule") 11.

In the TPC itself, Airco has charged Nissin with having "prepared a Straight Bill of Lading and acted as the initial receiving carrier for cargo from Tanita Corp." (TPC ¶2), with having "negligently issued an improper Straight Bill of Lading"

(TPC ¶4(a)) and with having "failed to handle the cargo in a manner which would avoid loss and the risk of loss" (TPC ¶4(b)). But when it was then challenged by Nissin, Airco shifted gears to a contention that "at all relevant times, Nissin was a freight forwarder (and thus deemed an initial carrier) subject to liability under the Carmack Amendment" (Airco Mem. 4). That type of strict liability departure from Airco's original negligence claims is entirely understandable, given the facts (1) that Airco has made no effort at all to identify just what was assertedly wrong in the issuance of a straight bill of lading[1] and (2) that it was <u>Airco</u> and not Nissin that hired J.J. Phoenix Express, Ltd. ("Phoenix") to store the cargo overnight.[2]

What we are left with, then, is Airco's altered position that Nissin bears a kind of strict liability under the Carmack Amendment because it was a "freight forwarder" within the definition set out in 49 U.S.C. §13102(8)(and it was thus deemed to be an "initial carrier" for Carmack purposes). To that end Airco points to that statutory definition of "freight forwarder,"

---

[1] Tanita's Ex. A attached to its First Amended Complaint at Law, lists Airco as the carrier and "Tanita Corp. c/o Nissin Int'l" as the shipper.

[2] It was during that overnight storage that the trailer housing the cargo was stolen from Phoenix. Surely Airco is not claiming that Nissin was somehow negligent in having chosen Airco as the carrier (a kind of negligent hiring theory), a claim that would perforce have to be predicated on <u>Airco's</u> negligence in having decided on Phoenix as the place for overnight storage of the cargo!

2

urging that Nissin indeed proffers the various services identified in the statute:

> (8) The term "freight forwarder" means a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business--
>
> > (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> >
> > (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
> >
> > (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.
>
> The term does not include a person using transportation of an air carrier subject to part A of subtitle VII.

But the difficulty with that contention is that although Nissin is indeed a licensed freight forwarder (as acknowledged by its R. Mem. 10 n.8), it was <u>not</u> performing that role in the transaction at issue. First, as indicated by the bill of lading, which lists "Tanita c/o Nissin" as the shipper, Nissin is a <u>distributor</u> for Tanita, which was the reason that the cargo had been in storage in Nissin's warehouse to begin with.[3] It thus did not carry out the subsection (A) assemblage and consolidation

---

[3] Nissin R. Mem. 8 n.7 says:

> Most of the cargo in question had been stored at the Nissin facility for about 18 months.

3

function in any conventional sense of that concept. And as this Court stated in Independent Mach., Inc. v. Kuehne & Nagel, Inc., 867 F.Supp. 752, 759 (N.D. Ill. 1994):

> Nothing in the litigants' submissions deals with, and this Court has not located any appellate tribunal's discussion of, the question whether a company that provides assemblage and consolidation services "in the ordinary course of its business" but has not done so in the transaction at issue--this time doing nothing more than arranging for the transportation of a single item--is still subject to the strictures of the Carmack Amendment as to that item. That certainly would seem to be a strained reading of the statute, for it would impose strict liability on an entity that was not in fact performing freight forwarding services in the case at issue--a sort of revivification of the older concept described in [Chicago, M., St. P. & P. R.R. v.] Acme Fast Freight [Inc.], 336 U.S. [465,] 484 [(1949)], 69 S.Ct. [692,] 701. Thus K & N's sworn submission ought logically to be enough to take it out of the ambit of the Carmack Amendment (accord, Pacific Austral Party, Ltd. v. Intermodal Express, Inc., No. 88 C 10470, 1990 WL 141010, at *1-2, 1990 U.S. Dist LEXIS 12638, at *3-*4 (N.D. Ill. Sept. 26)).[4]

At least as importantly, there is also nothing here to confirm that Nissin assumed responsibility in the fashion that subsection (B) requires--a requirement that our Court of Appeals

---

[4] [Footnote by this Court] Byrton Dairy Prods., Inc. v. Harborside Refrigerated Servs., Inc., 991 F.Supp. 977, 982 (N.D. Ill. 1997) raised the question (but ultimately did not have to decide) whether a party's proffering of consolidation services in other transactions may bring that party within the "freight forwarder" definition even if it does not perform that function as to the shipment under consideration. There is still no appellate authority on the subject, though there are decisions going both ways at the district court level. This Court sees no reason to alter its views as expressed in the text's quotation from Independent Mach.--but as the next paragraph in the text demonstrates, Airco must lose on a separate ground in any event.

4

in <u>Chemsource, Inc. v. Hub Group, Inc.</u>, 106 F.3d 1358, 1362 (7th Cir. 1997) has expressly held to be an <u>essential</u> ingredient of "freight forwarder" status, and hence of Carmack Amendment liability.[5] And that factor alone suffices to defeat Airco's TPC.

## Conclusion

Nissin's motion to dismiss the Airco TPC is granted.[6] This Court of course recognizes that the discussion and analysis here have in part drawn upon information submitted by Nissin outside of the four corners of the TPC, while normally a Rule 12(b)(6) motion requires that the pleading under attack be accepted as gospel. But that has been done only to facilitate matters, both (1) because there is no reason to believe that the Nissin assertions are inaccurate and (2) because Airco is granted leave to file an amended TPC on or before July 17, 2000--<u>if</u>, as stated earlier, such a pleading can be drafted based on what Airco knows of the facts and on what its counsel can assert in good

---

[5] This last point dooms Airco's effort to invoke <u>Byrton Dairy</u> in support of its position, for that case (991 F.Supp. at 984) has expressly followed <u>Chemsource</u> in that respect, just as this Court had anticipated that <u>Chemsource</u> ruling in <u>Independent Mach.</u>, 867 F.Supp. at 760 & nn. 6 and 7.

[6] Nissin's R. Mem. has also advanced other arguments in support of dismissal, but this opinion has not found it necessary to speak to those arguments because the matters discussed here suffice to scotch Airco's present attempt to state a claim. No adverse inference as to the strength of those additional contentions on Nissin's part should be drawn from this opinion's omission of such further discussion.

5

conscience as the predicate for such a claim.

                                                    */s/ Milton I. Shadur*
                                            Milton I. Shadur
                                            Senior United States District Judge

Date: July 6, 2000