Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6439 | **DATE** | 3/30/2001 |
| **CASE TITLE** | Tokio Marine & Fire Insurance vs. J.J. Phoenix Express, Ltd., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of third-party defendant Nissin International Transport U.S.A., Inc. for summary judgment [40] is granted. Airco International, Inc.'s amended third party complaint against Nissin is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 3 0 2001 | |
| | Notified counsel by telephone. | | date docketed | 58 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 3/30/2001 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOKIO MARINE & FIRE INSURANCE GROUP, as Subrogee of TANITA CORP. OF AMERICA<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>J.J. PHOENIX EXPRESS, LTD., and AIRCO INTERNATIONAL, INC.,<br>　　　Defendants, and<br><br>AIRCO INTERNATIONAL, INC.<br>　　　Cross-claimant,<br><br>　　　　　v.<br><br>J.J. PHOENIX EXPRESS, LTD.<br>　　　Cross-defendant, and<br><br>AIRCO INTERNATIONAL, INC.<br>　　　Third-party claimant,<br><br>　　　　　v.<br><br>NISSIN INTERNATIONAL TRANSPORT U.S.A., INC.,<br>　　　Third-party defendant. | No. 99 C 6439<br><br>DOCKETED<br>MAR 30 2001 |

## MEMORANDUM OPINION AND ORDER

Nissin International Transport U.S.A., Inc. ("Nissin"), third-party defendant, moves for summary judgment on Airco International, Inc.'s ("Airco") First Amended Third Party Complaint for indemnity and contribution from Nissin. For the reasons stated below, the court

1

grants the motion.

## BACKGROUND

This case involves the issue of where liability will ultimately lay for cargo that was to be transported from Illinois to Minnesota but was stolen before it arrived at its destination. Plaintiff, Tokio Marine & Fire Insurance Group ("Tokio"), as subrogee of Tanita Corp. of America ("Tanita"), has sued defendants J.J. Phoenix Express, Ltd. ("J.J. Phoenix") and Airco International, Inc. ("Airco"), incorrectly named as Airco, Inc., in a First Amended Complaint (hereafter "amended complaint") alleging claims against both defendants under the Carmack Amendment, 49 U.S.C. § 14706, as well as common law claims of bailment and negligence. Tokio alleges that on or about November 18, 1997, Tanita, through its agent, contracted with Airco, a common carrier, and/or[1] J.J. Phoenix, a common carrier, to transport a cargo of scales which weigh a human's body fat from Nissin's warehouse in Illinois to Glencoe, Minnesota. (Am. Compl. ¶¶ 3-4, 7, 18.) The same day, Airco and/or J.J. Phoenix issued a Bill of Lading acknowledging receipt of these goods from the Nissin warehouse for delivery to Minnesota, loaded and signed for the cargo and then transported it to their terminal in Elk Grove Village, Illinois. The cargo was to remain there until the next morning when it was to be delivered to Minnesota. (*Id.* at ¶¶ 8-9, 18-19.) The Bill of Lading lists Airco as the carrier and "Tanita Corp. c/o Nissin Int'l" as the shipper. (*Id.* at Ex. A.) At the time that Airco and/or J.J. Phoenix received the cargo, it was in good order and condition, but the cargo was not delivered in like

---

[1] Tokio makes the same allegations as to Airco and J.J. Phoenix and therefore the court utilizes "and/or" instead of repeating the same allegations as to both.

good order and condition but, rather, was lost and never recovered. (*Id.* at ¶¶ 10, 12, 20, 22.) Tokio alleges that as a result of the loss, Tanita was damaged in the amount of $121,400. (*Id.* at ¶¶ 13, 23.)

Airco filed a cross-claim against J.J. Phoenix. Airco also filed a third party complaint against Nissin for reimbursement alleging that Nissin negligently issued the Bill of Lading and failed to handle the cargo to avoid loss or was otherwise negligent. Nissin moved to dismiss the third party complaint, and Judge Shadur dismissed with leave to replead if Airco could do so in good faith. *See Tokio Marine & Fire Ins. Group v. J.J. Phoenix Express, Ltd.*, 104 F. Supp. 2d 946, 949 (N.D. Ill. 2000). Subsequently, Airco filed a First Amended Third Party Complaint (hereafter "amended third party complaint"), the complaint at issue here, against Nissin for indemnity and contribution alleging that Nissin is a freight forwarder under the Carmack Amendment and strictly liable for any loss that Airco incurs to Tokio. In the amended third party complaint, Airco alleges the following facts: Airco is a broker of transportation services and Nissin is a freight forwarder that uses brokers and common carriers in the transportation of goods. Nissin received two shipments of scales from Tanita to assemble and assume responsibility for the shipment of the cargo to its destination in Minnesota. Nissin contacted Airco to select a carrier for the transportation of the cargo, and, Airco, in turn, selected and contracted with J.J. Phoenix to pick up the cargo from Nissin's warehouse. Nissin issued a bill of lading for transportation of the cargo from its warehouse in Illinois to Glencoe, Minnesota. On the evening of November 18, 1997, a J.J. Phoenix driver arrived with a trailer at Nissin's warehouse in Wood Dale, Illinois, Nissin loaded the cargo on the trailer, J.J. Phoenix signed the

3

bill of lading and transported the cargo to its terminal in Elk Grove Village, Illinois where it was to remain until the next morning, but on the morning of November 19, the trailer and its cargo were discovered missing and believed stolen. (First Am. Third Party Compl. ¶¶ 4-12.)

Nissin moves for summary judgment arguing that (1) there is no strict liability third party claim for indemnity or contribution under the Carmack Amendment but Airco must plead and prove negligence, which Airco cannot do because it is undisputed that the cargo was stolen while in the J.J. Phoenix's possession; and (2) even under the strict liability theory alleged by Airco, Nissin was not acting as a freight forwarder for the cargo.[2] Because this court considers resolution of Nissin's first argument dispositive of the motion, it does not reach the second argument.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of material fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's

---

[2] These are essentially the same two arguments that Nissin made in support of its motion to dismiss. In granting that motion, Judge Shadur addressed only Nissin's latter argument, whether Nissin was a freight forwarder, without commenting on the merit of the first argument. See *J.J. Phoenix Express, Ltd.*, 104 F. Supp. 2d at 949 n.6 ("No adverse inference as to the strength of those additional contentions on Nissin's part should be drawn from this opinion's omission of such further discussion."). After Airco filed its amended third party complaint, Judge Shadur gave Nissin time to file a motion for summary judgment on the issue of Nissin's status as freight forwarder and did not require the parties to file Local Rule 56.1(a)(3) and (b)(3) statements.

notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Airco's amended third party complaint seeks indemnity and contribution from Nissin under the Carmack Amendment for any liability it may incur to Tokio.[3] In Count I, Airco seeks indemnity to the extent Airco is found liable to Tokio and in Count II, Airco seeks contribution from Nissin for the amount beyond Airco's pro rata share. As an initial matter, although Airco asserts in its amended third party complaint that it is a broker in its relationship with Nissin, this

---

[3]Airco fails to properly set forth the basis of this court's jurisdiction. Airco merely alleges that the court has jurisdiction over this action pursuant to Rule 14(a) of the Federal Rules of Civil Procedure. (First Am. Third Party Compl. ¶ 1.) However, the Federal Rules of Civil Procedure do not confer jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978); *Deutsche Credit Corp. v. Nat'l Bank and Trust Co. of South Bend*, 114 F.R.D. 4, 6-7 (N.D. Ind. 1986) ("'Rule 14 does not extend jurisdiction. It merely sanctions an impleader procedure . . ."). The court will consider the amended third party complaint, however, since Airco seeks indemnity and contribution under the Carmack Amendment, and, therefore, jurisdiction is proper under federal question jurisdiction.

designation is irrelevant to Airco's indemnity and contribution claims against Nissin under the Carmack Amendment for Carmack liability it may incur to Tokio since (as set forth in more detail herein) only *carriers* or *freight forwarders* can be liable to shippers under the Carmack Amendment.[4] As such, the court must assume that if Airco sustains any Carmack liability to Tokio, it will be because Airco has been determined to be either a carrier or a freight forwarder. Because Tokio only alleges in its complaint that Airco was a carrier and not a freight forwarder, the issue is narrowed even further to whether Airco, as a *carrier* potentially liable to Tokio, can proceed on its indemnity and contribution claims under the Carmack Amendment or whether Nissin is entitled to summary judgment on these claims.[5]

---

[4]If Airco were determined to be a broker, Tokio's Carmack Amendment claim would be moot. However, since Tokio also asserted claims of negligence and bailment against Airco, Airco's claims for indemnity and contribution for "any liability" to Tokio arguably could have included any common law liability it might incur to Tokio on these claims. However, claims for indemnity and contribution against Nissin for such common law liability would, at the least, require allegations of Nissin's fault for the loss, which are not present in Airco's amended third party complaint. Therefore, the court construes Airco's amended third party complaint as bringing claims for indemnity and contribution only for any Carmack liability Airco may incur to Tokio, not for any negligence or bailment liability Airco may incur to Tokio. It appears this is how Airco construes its amended third party complaint as well. (Airco's Resp. at 2.)

[5]Airco characterizes Nissin's motion for summary judgment as challenging only the indemnity claim. (Airco's Resp. at 2-3.) While it does appear that Nissin thought that the amended third party complaint was only for indemnity, *see* Nissin's Mot. Summ. J. ¶ 6 (noting that "Airco filed an amended third-party complaint against Nissin for indemnity") and the first heading of Nissin's motion for summary judgment references only a claim for indemnity, the court believes this was an oversight. Not only does Nissin, in its motion, make a general request for summary judgment in Nissin's favor and against Airco, but in its reply brief asserts that it is requesting summary judgment on Airco's third-party complaint. (Nissin's Reply at 12-13.) Moreover, Airco, in its response brief does not limit its arguments to indemnity, but argues that "[a]s a third party plaintiff claiming contribution and indemnification from Nissin under the strictures of the Carmack Amendment, Airco need not allege [negligence]." (Airco's Resp. at 11.) Therefore, the court construes Nissin's motion for summary judgment as pertaining to both

The Carmack Amendment provides:

§ 14706. Liability of carriers under receipts of bills of lading

(a) General Liability.--
  (1) Motor carriers and freight forwarders. – A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported . . . . A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.
  (2) Freight Forwarder.-- A freight forwarder is both the receiving and delivering carrier. . . .

(b) Apportionment.-- The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person.

49 U.S.C. § 14706.[6] "The Carmack Amendment was enacted to 'relieve shippers of the burden

---

claims – for indemnity (Count I) and contribution (Count II). Airco at this late date cannot claim surprise or that it was unprepared to defend a motion for summary judgment on both claims since Nissin's motion for summary judgment states "any third-party claim against Nissin must be premised on negligence," *see* Nissin's Mot. Summ. J. at ¶17, and Nissin put Airco on notice that the arguments made in the motion are the same arguments Nissin made in its reply brief in support of its motion to dismiss, which were directed at claims of both contribution and indemnity. (*Id.* at ¶ 10.)

[6] 49 U.S.C. § 14706, ICC Termination Act of 1995, effective January 1, 1996, replaces 49 U.S.C. § 11707. Section 11707(a)(1) was derived from part of former 49 U.S.C. § 20(11), § 11707(a)(2) was derived from part of former § 1013 and § 11707(b) is derived from former § 20(12). *See Gulf & Western Indus., Inc. v. Old Dominion Freight Line, Inc.*, 633 F. Supp. 688,

7

of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 256 (7th Cir. 1982) (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). The Carmack Amendment sets up a two-part scheme whereby, under subpart (a)(1), a shipper is entitled to relief from either the carrier issuing the bill of lading or the carrier delivering the goods to the final destination (either of these carriers will be liable for loss caused by any carrier used during the trip); and then, the carrier held liable to the shipper may, in turn, seek recovery from the carrier, which was responsible for the loss under subpart (b). *See id.* at 256-57 (citing 49 U.S.C. § 11707(a)(1) and § 11707(b)); *see also PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 588-89 (1st Cir.1988) (citing 49 U.S.C. § 11707(a) and § 11707(b)); *Barrett Moving & Storage Co. v. All States Air Cargo, Inc.*, 823 F. Supp. 498, 499-500 (N.D. Ill. 1993) (Moran, J.); *Custom Cartage, Inc. v. Motorola, Inc.*, 1999 WL 89563, *2 (N.D. Ill. Feb. 16, 1999) (Kocoras, J.) (citing 49 U.S.C. § 14706(a)(1) and § 14706(b)).

1. <u>Carrier or Freight Forwarder Liability to Shipper under Carmack Amendment</u>

In order to establish a prima facie case to recover under the Carmack Amendment, "a shipper must prove the following three elements . . . against a common carrier: (1) delivery of the goods to the carrier in good condition, (2) arrival of the goods in a damaged condition at the final destination, and (3) the amount of damage." *S.C. Johnson & Son*, 695 F.2d at 256 (citing *Missouri Pac. R.R. v. Elmore & Stahl*, 377 U.S.134, 138 (1964)); *see also Jos. Schlitz Brewing Co. v. Transcon Lines*, 757 F.2d 171, 174 (7th Cir. 1985) (showing of the prima facie case creates

---

691 n.2 (M.D.N.C. 1986).

a "presumption of negligence" as to the carrier) (citing *Plough, Inc. v. Mason and Dixon Lines*, 630 F.2d 468 (6th Cir. 1980)). "Once the shipper has established a prima facie case the carrier must demonstrate that it was not negligent and that the damage was caused by one of the following events: (1) an act of God, (2) an act of the public enemy, (3) an act of the shipper, (4) an act of the public authority or (5) the inherent nature or vice of the goods." *S.C. Johnson & Son*, 695 F.2d at 256 (citing *Missouri Pac. R.R.*, 377 U.S. at 137-38). This has been termed a "strict liability" standard of proof because once the shipper makes out its prima facie case, the carrier will be liable to the shipper unless the carrier can demonstrate that it was not negligent and that one of the exceptions applies. *See Tokio Marine and Fire Ins. Co., Ltd. v. Amato Motors, Inc.*, 996 F.2d 874, 876 and n.6 (7th Cir. 1993) (noting that statute "incorporated common law principles relating to liability of interstate carriers" which was that "carriers were liable for loss or damage to goods essentially without regard to fault"); *Acme Fast Freight, Inc. v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 166 F.2d 778, 782 (2d Cir. 1948), *rev'd on other grounds*, 336 U.S. 465 (1949).

The shipper may also recover from a freight forwarder[7] under the Carmack Amendment

---

[7]A "freight forwarder" is defined in 49 U.S.C. § 13102(8) as:

. . . a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business–
    (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
    (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
    (C) uses for any part of the transportation a carrier subject to jurisdiction

under the same standard applicable to a shipper's claim against a carrier. *Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 469 (1949) ("the forwarder is liable to its shipper for loss or damage to the freight exactly as if it were the initial carrier"); *see also* 49 U.S.C. § 14706(a)(2). However, because a freight forwarder has a dual role – it is regarded as an initial carrier vis-a-vis the shipper but regarded as the shipper vis-a-vis a carrier – for purposes of seeking reimbursement from a carrier, the forwarder must bring a claim against the carrier as a shipper under § 14706(a)(1) instead of bringing claim against such carrier under § 14706(b). *See generally Chicago, Milwaukee, St. Paul & Pac. R.R.*, 336 U.S. 465 (holding that freight forwarder that pays loss to shipper could not seek recompense from carrier responsible for loss under § 20(12) [now § 14706(b)]). Additionally, the Carmack Amendment preempts a shipper's state law claims against carriers and freight forwarders for goods lost or damaged in interstate transit. *See, e.g., North American Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996); *Custom Cartage*, 1999 WL 89563, at* 2; *see also Waltrous, Inc. v. B.P.T. Air Freight Fowarding, Inc.*, 1990 WL 36696, *2 (N.D. Ill. Mar. 7, 1990) (holding that because a freight forwarder is considered a shipper in relation to the carrier, a freight forwarder's state law claims against a carrier are also preempted).

2. <u>Third Party Liability for Indemnity and Contribution Under Carmack Amendment</u>

Airco claims that it is entitled to indemnity and contribution under the Carmack Amendment but fails to define these terms or set forth language pertaining to indemnity or contribution under the Amendment. In general, the concepts of indemnity and contribution are

---

under this subtitle.

described as follows. "Indemnity . . . involves an attempt to shift the *entire* loss from one who is compelled to pay without regard to his own fault, to another person who was the actual wrongdoer." Saul Sorkin, 3 Goods in Transit § 14.01[1] (2000) [hereafter "Sorkin"]. "The right to indemnification may be created by statute, by an express contract, or it may be implied by law to prevent unjust enrichment or an unfair result." *Id.* "Contribution involves an apportionment of responsibility where each of the wrongdoers owes a duty to the injured party or to each other and the degree of responsibility each wrongdoer must bear for causing the injury must be determined." *Id.* at § 14.01[2].

a.  Indemnity Under the Carmack Amendment

Courts and commentators have characterized 49 U.S.C. § 14706(b) as a statutory indemnity provision. *See, e.g., PNH Corp.*, 843 F.2d at 589 ("Subsection (b) . . . allows the initial carrier found strictly liable under subsection (a) to be indemnified by the carrier 'over whose line or route the loss or injury occurred . . . .'"); Sorkin, § 14.03 (construing subpart (b) as an indemnity provision though it is entitled "apportionment," which sound more like contribution). Airco did not cite § 14706(b) in its amended third party complaint, but does cite it as the basis for its claims in its response to the motion for summary judgment. (Airco's Resp. at 12.) However, without citing language of § 14706(b), Airco contends that under this provision a third party plaintiff need only prove the same elements that a shipper has to prove to recover against a carrier or freight forwarder under subpart (a). In its response, after setting forth a shipper's burden under the Carmack Amendment, Airco states: "The Carmack Amendment specifically provides for apportionment of damages and does not modify the burden of the parties

11

in a claim for apportionment." (*Id.* at 12.) As best the court can discern, Airco's argument is that because a freight forwarder is presumed negligent vis-a-vis the *shipper's* claim under the Carmack Amendment, Nissin as a freight forwarder is presumed negligent as to any third party claim *Airco* may have against Nissin, and it is Nissin's burden to prove it was not negligent and not Airco's burden to prove Nissin's negligence. (*Id.* at 11-13.)[8] However, Airco not only neglects to explain how such an interpretation follows the language of § 14706(b), but also cites no case applying such a standard to a carrier's third party claim for indemnity or contribution against another carrier or freight forwarder.

Nissin, on the other hand, argues that a carrier seeking indemnity or contribution under the Carmack Amendment must bring a claim sounding in negligence. (Nissin's Mot. Summ. J. at 5-6.) Nissin relies primarily on *Mid-Continent Int'l v. Evergreen Marine Corp.*, 1987 WL 28266, *2 (N.D. Ill. Dec. 14, 1987) (Plunkett, J.) (observing that, although § 11707(b) [now § 14706(b)] authorizes suits between carriers, it is silent on how the loss is to be apportioned and holding that "case law supports [the] position that suits between carriers are to be apportioned according to common law negligence principles" and thus a carrier is liable for "damage caused by its breach of duty to use reasonable care in the transportation of goods") (citing, *inter alia*, *American Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc.*, 689 F.2d 295 (1st Cir. 1982),

---

[8] Airco argues that this standard is justified since Tokio did not name Nissin as a defendant in the First Amended Complaint and that Airco by filing its third party complaint merely placed Nissin in the same position it would have occupied had it been named – as a defendant subject to strict liability under the Carmack Amendment. (Airco's Resp. at 2 n.1 and 13.) However, as the court sets forth herein, the standards for carrier or freight forwarder liability to shipper and third party liability are different, and the fact that a party is not joined in a complaint does not change the standards of proof.

*Bonifield Bros. Truck Lines, Inc.* v. *Edwards*, 450 S.W.2d 240 (Ky. Ct. App. 1970)), and *Tokio Marine and Fire Ins. Co., Ltd.* v. *Amato Motors, Inc.*, 1995 WL 493434, *9 n.19 and *11 (N.D. Ill. Aug. 15, 1995) (Zagel, J.) (agreeing with *Mid-Continent Int'l* v. *Evergreen Marine Corp.*, 1987 WL 28266, at *2). Nissin argues that because any third party claim must be based on negligence and because it is undisputed that the cargo was stolen while in the possession of J.J. Phoenix, Airco cannot establish proximate causation (a necessary element of negligence), and, therefore, summary judgment should be granted.

After a thorough analysis, the court finds that neither party correctly cites the applicable standard for one carrier's third party suit against another carrier under § 14706(b). That section provides, "The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier *over whose line or route the loss or injury occurred* . . . ." 49 U.S.C. § 14706(b) (emphasis added). The First Circuit has held that in order for an initial or delivering carrier (who is liable to the shipper under subpart (a)) to recover from another carrier under subpart (b), it must prove, by a preponderance of the evidence, that the loss or damage to the cargo did not occur while the cargo was in its possession, but took place over the route of the particular carrier it is suing. *See PNH Corp.*, 843 F.2d at 592 ("In subsection (b), the burden of proof to establish exactly where the loss occurred lies with the carrier found liable under subsection (a)."). The First Circuit construed this as a type of strict liability of the carrier over whose line the loss occurred. *See id.* at 589 ("We think the only fair reading of this wording ['*over whose line or route the loss or injury occurred*'] is that it imposes strict liability. Nowhere is negligence or

13

fault alluded to. We will not read an additional element of liability into the statute where the plain language leaves no room for it, and where there is no indication that Congress intended such an illogical construction."). The First Circuit distinguished its earlier ruling in *American Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc.*, 689 F.2d 295 (1st Cir. 1982), on the basis that there it applied Puerto Rico negligence law to resolve a dispute between two carriers as to liability for a shipper's loss because the parties to that action had conceded that the applicable law was Puerto Rico law and did not mention or consider the standards under § 11707(b), but that in *PNH*, the parties and the court treated the case as one arising under § 11707(b). *See id.* at 589 n.4. The First Circuit also distinguished other cases in which courts had read negligence into § 11707(b), namely, *Mid-Continent Int'l* and *Bonifield Bros.*, as against the clear language of the provision.[9]

The court finds *PNH* persuasive and holds that the standard set forth therein is the correct standard to apply to a carrier's third party claim against another carrier under § 14706(b). Other courts in this district have applied a similar standard under § 14706(b). *See William Wrigley, Jr. Co. v. Stanley Transp., Inc.*, 121 F. Supp. 2d 670, 673 (N.D. Ill. 2000) (Bucklo, J.) (where loss occurred while in possession of carrier [Lee] to whom motor carrier had consigned goods, court stated that under (b) "consigning carrier 'is entitled to recover from the carrier over show line or route the loss or injury occurred the amount required to be paid to the owners of the property' . . .

---

[9]The First Circuit did note, however, the possibility that an indemnity or contribution claim sounding in negligence could be brought by the carrier held strictly liable under (b) against another carrier if the loss or damage was caused by negligent acts on the part of a preceding carrier. *See PNH Corp.*, 843 F.2d at 589 n.4 (noting that this seems to have been the concern in *Bonifeld Bros.*, a case upon which *Mid-Continent Int'l* had also relied).

14

[i]f the law were any more clear, it would say, 'Lee, pay up.'"); *R.C. Serv., Inc. v. Kende Leasing Corp.*, 1985 WL 2118, *1 (N.D. Ill. July 30, 1985) (Moran, J.) (holding that under § 11707(b) is a type of absolute liability in which "a common carrier who pays a claim to a shipper for loss of goods pursuant to [§ 11707(a)], need not prove negligence in order to recover from the common carrier on whose line the loss occurred"). Applying § 14706(b), the court concludes that Airco's claim against Nissin fails because in order to recover under this provision, Airco was required to plead and prove that *the loss occurred while in the possession of Nissin*, and it is undisputed that the loss did not occur while in Nissin's possession. Both Airco and Nissin assert that the loss occurred while the cargo was stored at J.J. Phoenix's terminal. (Airco's Resp., Ex. 2 (letter from Nissin's Mike Vinarsky)).

There is a further problem with Airco's claim. Airco claims Nissin was a freight forwarder and not just a carrier. As pointed out by Nissin, it is not even clear that § 14706(b) would apply to a carrier's third party claim against a *freight forwarder*, as opposed to another carrier, as Airco attempts to do here. Freight forwarders are to be treated as shippers in their relationship with carriers. *See Chicago, Milwaukee, St. Paul & Pac. R.R.*, 336 U.S. at 489. As such, the Supreme Court has held that § 20(12) [later § 11707(b), now § 14706(b)] did not apply to permit a *freight forwarder* to bring a claim for reimbursement against a *carrier*. *See id.* The corollary of this holding would seem to be that § 14706(b) is inapplicable where a *carrier* sues a *freight forwarder* for indemnity, since the freight forwarder is a shipper vis-a-vis a carrier and § 14706(b) applies only between carriers. Thus, if Nissin is a freight forwarder (and thus a shipper vis-a-vis Airco), Airco's claim under § 14706(b) should likewise be dismissed. *Cf.*

15

*Kansas Power and Light Co. v. Burlington Northern R.R.*, 1991 WL 127459, *2 (D. Kan. June 28, 1991) (dismissing carrier's third party complaint against shipper for indemnity under Carmack Amendment reasoning, *inter alia*, that the cited cases did not stand for the proposition that a carrier can bring an action under the Carmack Amendment for indemnity against a shipper, and the indemnity provision in § 11707(b) applies only between carriers).

Finally, assuming § 14706(b) does not apply, any indemnity claim based on Airco's Carmack liability to Tokio would have to be brought based on federal common law, which looks to the existing common law rights and remedies of parties. *See Byrton Dairy Prods., Inc. v. Harborside Refrigerated Servs., Inc.*, 991 F. Supp. 977, 987 (N.D. Ill. 1997) (citing, *inter alia*, *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625-26 (2d Cir. 1980)). Where courts find that common law rules apply to an indemnity claim, they require plaintiff to establish negligence – a duty, a breach of duty, and that the injury was proximately caused by the breach. *See Tokio Marine and Fire Ins.*, 1995 WL 493434, at *4. Under this standard, if there is no evidence that the defendant's acts or omission caused the theft of cargo, proximate causation is missing and a claim for negligence fails. *Compare id.* at *5 (granting motion for summary judgment to third party defendant on cross claim because of lack of causation), *with Byrton Dairy Prods.*, 991 F. Supp. at 987 (denying motion for summary judgment on cross claims for indemnity because question of fact existed as to cause of spoilation of goods).

Even applying a negligence theory, Nissin is entitled to summary judgment. Not only

does Airco's amended third party complaint not plead common law negligence,[10] which includes the requirement that Nissin have proximately caused the loss, neither does the record contain evidence as to acts or omissions of Nissin that could create an inference that Nissin proximately caused the loss. That Nissin called Airco and demanded the shipment be removed from its warehouse by 6:00 p.m., which resulted in Airco contracting with J.J. Phoenix to pick it up and hold it overnight until Airco could have time to contract with a carrier to transport it to Minnesota, and that J.J. Phoenix was given a bill of lading by Nissin, which was not prepared by Airco though it had Airco's name, see Grant Aff. ¶¶ 3-6, do not raise issues of how these things, even if true, would result in Nissin being the cause of the theft that eventually took place while at J.J. Phoenix's facility. The undisputed fact remains that *Airco* contracted with (i.e. chose, selected) J.J. Phoenix to pick up the shipment from Nissin's warehouse and hold it overnight in J.J. Phoenix's warehouse. (Airco's Resp. at 2; Grant Aff. ¶ 4; Nissin Mot. Summ. J. at 2.) Neither Airco nor Nissin disputes that the cargo was picked up from Nissin's facility on the evening of November 18, 1997 and was missing the next morning from J.J. Phoenix's terminal. Further, Airco has provided nothing, even in the form of argument, from which this court could infer that Nissin had a role in selecting J.J. Phoenix or knew anything about J.J. Phoenix's

---

[10]Indeed, Airco's original third party complaint had alleged a negligence theory on the part of Nissin alleging Nissin "negligently issued an improper Straight Bill of Lading" and "failed to handle the cargo in a manner which would avoid loss and the risk of loss." But, in his opinion dismissing the third party complaint, Judge Shadur noted that Airco had abandoned the negligence theory in its response brief and that such departure was "entirely understandable, given the facts (1) that Airco has made no effort at all to identify just what was assertedly wrong in the issuance of a straight bill of lading and (2) that it was Airco and not Nissin that hired J.J. Phoenix Express, Ltd. ("Phoenix") to store the cargo overnight." *See J.J. Phoenix Express, Ltd.*, 104 F. Supp. 2d at 947.

business or storage practices prior to this incident. Therefore, Nissin is entitled to summary judgment on Airco's indemnity claim (Count I).

b.  Contribution Under the Carmack Amendment

Unlike the claim for indemnity, courts have not construed the language of § 14706(b) to be a statutory contribution provision. Thus, it would appear any claim for contribution would have to be based on state or federal common law principles. However, the Seventh Circuit has held that where a contribution claim is based on a state contribution law that requires joint tort liability, there is no claim for contribution for Carmack Amendment liability. *See North Am. Van Lines, Inc.*, 89 F.3d at 457-58 (reasoning that Carmack Amendment liability is contractual in that the liability scheme of the Amendment is incorporated into the bill of lading (the contract) as a matter of federal law and federal law preempts a shipper's state law remedies including those sounding in tort, therefore, there is no tort liability of a carrier to a shipper for which it could be a joint tortfeasor for contribution purposes). Airco has not asserted a state law claim for contribution. (Airco's Resp. at 12 n.6.)

A contribution claim has been held to be available under federal common law negligence principles. *See Hartog Trading Corp.* v. *M/V Presidente Ibanez*, 1991 WL 33605 (E.D. La. Mar. 6, 1991) (where shipper sued three carriers under Carmack Amendment and two of them cross claimed against first carrier for contribution, court reasoned that since the Carmack Amendment was silent on the issue of contribution "contribution was available in the situation of the joint liability shared by" joint tortfeasors and since the Carmack Amendment was merely a reenactment of already existing common law rights, common law negligence principles would

supply the gap in the statute concerning contribution) (relying on *Gordon H. Mooney, Ltd. Farrell Lines, Inc.*, 616 F.2d 619, 625 (2d Cir. 1980)).[11] Airco does not appear to assert a claim for contribution under federal common law principles. (Airco's Resp. at 12 n.6.) But if it did, the claim would have to be premised on negligence and for the same reasons stated above with respect to indemnity, there is no allegation or evidence of causation – i.e. that Nissin proximately caused the loss or theft of the cargo – in the record before the court. Therefore, Nissin is entitled to summary judgment on Airco's contribution claim (Count II).[12]

## CONCLUSION

For the reasons set forth herein, the court grants Nissin's motion for summary judgment [#40], and dismisses Airco's amended third party complaint against Nissin.

Date: March 30, 2001

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[11]However, it seems to the court that under the reasoning of *North American* even a federal common law theory of contribution for Carmack liability if based on joint *tort* liability would not exist.

[12]The court does not address Nissin's statute of limitations argument, brought up for the first time in its reply brief, since the court disposes of the motion on the issues addressed in this opinion.

19